Filed 6/28/24  Guardianship of Grace C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| Guardianship of GRACE C., a minor. | B328370 |
| ROBERT CERDA, | (Los Angeles County Super. Ct. No. BP157995) |
| Petitioner and Appellant, | |
| v. | |
| DAVID CERDA et al., | |
| Objectors and Respondents. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Michael C. Small, Judge.  Affirmed.

        Robert Cerda, in pro. per., for Petitioner and Appellant.

        No response for Objectors and Respondents.

Petitioner and appellant Robert Cerda (father) appeals from orders denying his petition to terminate the guardianship of David Cerda and Patty Cerda (collectively, grandparents) over his daughter Grace and granting the grandparents' petition to fix out-of-state residence. We affirm the trial court's orders.

## BACKGROUND

### April 2013 DVRO custody order

On April 11, 2013, father obtained a temporary domestic violence restraining order (DVRO) protecting Grace and father against Grace's mother, Sally Talavera (mother) in Los Angeles County Superior Court case No. MF006143. A form DV-140 custody and visitation order attached to the April 11, 2013 DVRO granted legal custody of Grace to both parents, physical custody to mother, and visitation to father. The form DV-140 states that the custody and visitation orders provided on the form remain in effect after the restraining orders expire. The restraining order expired on October 11, 2013.

### June 2014 juvenile court custody order and final judgment

In August 2013, the Los Angeles County Department of Children and Family services filed a petition on behalf of then 16-month-old Grace under Welfare and Institutions Code section 300, subdivisions (a) and (b) in case No. CK99277. The juvenile court ordered Grace detained from father and released to mother's care. On June 24, 2014, the juvenile court issued a custody order and final judgment terminating dependency jurisdiction, granting mother sole legal and physical custody of Grace, and granting father monthly monitored visitation.

**Grandparents' guardianship**

Mother voluntarily relinquished custody of Grace to the grandparents on November 16, 2014. With mother's consent, the grandparents were appointed as Grace's legal guardians on April 9, 2015 in Los Angeles Superior Court case No. BP157995. At the April 9, 2015 guardianship hearing, the superior court ordered continued monthly visits between Grace and father, to be monitored by the grandparents.

**DVRO's against father and termination of father's visitation**

On May 27, 2015, the grandparents obtained a five-year DVRO against father. In response to a petition by the grandparents alleging that father had been arrested for attempting to abscond with Grace during a monitored visit, the superior court on June 19, 2015, terminated father's visitation with Grace until further court order.

On March 15, 2021, the grandparents obtained a second five-year DVRO against father. This court affirmed the March 15, 2021 DVRO. (*Cerda v. Cerda* (Jun. 15, 2022, B312150) [nonpub.opn.].)

**Petitions to fix out-of-state residence and to terminate guardianship**

On February 14, 2022, the grandparents filed a petition to change their residence from California to Arizona. Father opposed the petition and filed a separate petition to terminate the grandparents' guardianship over Grace.[1] Father argued that the

---

[1] Mother also filed a petition to terminate the guardianship and an objection to the grandparents' petition to fix their residence in Arizona. She subsequently withdrew her petition to terminate the guardianship and her objection to the petition to

grandparents' guardianship was invalid because the June 24, 2014 juvenile court judgment awarding sole legal and physical custody to mother was void. Father maintained the juvenile court judgment could only be entered if Grace had been adjudicated a ward of the dependency court, and no such adjudication had been made.

Grace's appointed counsel filed a report in response to father's petition to terminate the guardianship and his objection to the grandparents' petition to relocate to Arizona. Counsel argued that father's basis for challenging the validity of the grandparents' guardianship—that the juvenile court judgment awarding mother sole legal and physical custody of Grace is void—was unavailing because he could not collaterally attack the juvenile court's judgment in a separate action. Counsel further argued that the probate court had jurisdiction to issue letters of guardianship to the grandparents because the juvenile court had terminated its jurisdiction in the June 24, 2014 custody order and final judgment. Counsel maintained that terminating the guardianship would leave Grace in a custody vacuum because mother had relinquished custody to the grandparents and father had no custody or visitation rights. Counsel reported that she had spoken with Grace, who said she was happy living with the grandparents in Arizona and liked the school she was attending there. Grace expressed willingness to visit with mother but did not want to visit with father.

The grandparents also filed a response to father's petition to terminate the guardianship and his opposition to their petition

---

fix out-of-state residence after reaching an agreement with the grandparents to have them bring Grace to Los Angeles for monthly visits.

to fix their residence in Arizona. In their response, the grandparents stated that they had cared for 11-year-old Grace since the age of two. They moved to Arizona because they had both retired, and Arizona afforded a more reasonable cost of living, enabling them to provide Grace with a better quality of life. The grandparents explained that they failed to seek the court's permission before moving to Arizona because they were unaware of the statutory requirement to do so. They filed a petition to fix out-of-state residence as soon as they learned of the error.

At the February 7, 2023 hearing on the petitions, the trial court ruled that it was bound by the juvenile court's June 24, 2014 judgment granting mother sole legal and physical custody of Grace and could not grant father the relief he sought. The court denied without prejudice father's petition to terminate the guardianship, granted the grandparents' petition to fix out-of-state residence, and ordered the case transferred to the State of Arizona. This appeal followed.

## DISCUSSION

### I. Petition to terminate guardianship

#### A. *Applicable law and standard of review*

When a court appoints a guardian, the parents' rights are suspended for the duration of the probate guardianship. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1123-1124.) The court may subsequently terminate a guardianship on a petition by the guardian, a parent, or the child, based on the child's best interest. (*Id.* at p. 1124; see Prob. Code, § 1601.) Unless terminated by a court order, a guardianship "continues until the child 'attains majority . . . .'" (*Guardianship of Ann S.*, at p. 1124.)

5

The purpose of a guardianship is "to ensure and protect the welfare of a minor who ordinarily cannot protect himself or herself." (*Guardianship of A.L.* (2014) 228 Cal.App.4th 257, 267.) "The best interest of the child is the sole criterion governing guardianship termination proceedings." (*Id.* at p. 268; see *Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 489-490 (*L.V.*).) "What constitutes the best interest of a child presents an inherently factual issue" and "is 'an inquiry that is particularly founded on application of the trial court's experience with human conduct.'" (*A.L.*, at p. 268.)

The decision whether to terminate a guardianship is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) "'"[A] reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'" (*Ibid.*)

**B.** *No abuse of discretion*

Father fails to establish any abuse of discretion in the trial court's denial of his petition to terminate the guardianship. Father's principal argument on appeal is the same as the one he advanced in the trial court below—that the juvenile court's June 2014 judgment granting mother sole legal and physical custody of Grace is void and that the probate court lacked jurisdiction to appoint the grandparents as Grace's guardians. Neither the June 2014 judgment nor the April 2015 order issuing letters of guardianship to the grandparents is a subject of this appeal, and we have no jurisdiction to consider them. (See *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 504.)

6

Father fails to demonstrate why terminating the guardianship is in Grace's best interests or how the trial court's denial of his petition exceeded the bounds of reason. He has not sustained his burden of establishing any abuse of discretion by the trial court. (*L.V., supra*, 136 Cal.App.4th at p. 490; *Guardianship of Simpson* (1998) 67 Cal.App.4th 914, 921.)

## II. Petition to fix out-of-state residence

### A. *Applicable law and standard of review*

A guardian or conservator may establish a residence outside California with the prior permission of the court. (Prob. Code, § 2352, subd. (c).) When a ward or conservatee has resided outside of California for four months (or for any longer or shorter period), the order granting the petition to fix out-of-state residence must require the guardian to either (a) return the ward to California or (b) cause the guardianship proceeding to be commenced in the place of new residence. (Prob. Code, § 2352, subd. (d)(1).)

### B. *No error in granting the petition*

Father fails to demonstrate any error in the trial court's granting of the grandparents' petition to establish their residence in Arizona. There was substantial evidence that relocation to Arizona from California was in Grace's best interests. The grandparents explained that the more reasonable cost of living in Arizona enabled them to provide Grace with a better quality of life. Grace stated that she was happy living with her grandparents in Arizona and that she liked attending school there.

We reject father's contention that the petition to fix residence outside of California should have been denied because the grandparents had relocated with Grace to Arizona without first seeking the court's permission. The grandparents explained

7

that their failure to obtain court approval before relocating to Arizona was inadvertent. They corrected the error immediately upon discovering their mistake. Probate Code section 2352, subdivision (d)(1) contemplates submission of a petition to fix residence after the guardian has relocated out of state. The trial court's order transferring the guardianship proceeding to the State of Arizona and directing that a petition for acceptance of the guardianship be filed in a court of competent jurisdiction in Arizona complied with the statutory requirements. (Prob. Code, § 2352, subd. (d)(1).)

Father's remaining arguments—that the June 2014 juvenile court judgment granting mother sole legal and physical custody of Grace, and the April 2015 probate court order appointing the grandparents as Grace's guardians are void because they conflict with the April 2013 family court order granting him joint legal custody of Grace—are not grounds for reversing the trial court's orders.

## DISPOSITION

The trial court's orders denying fathers' petition to terminate the guardianship and granting the grandparents' petition to establish their residence in Arizona are affirmed.

_____
CHAVEZ, J.

We concur:

_____     _____
ASHMANN-GERST, Acting P. J.     HOFFSTADT, J.

8